UNITED STATES DISTRICT COURT FOR THE DISTRICT OF ALABAMA
MIDDLE DIVISION

| | |
|---|---|
| DAMMUON EPPS, | Case No.: 3:18-cv-01017 |
| and | |
| On behalf of: | |
| Minor child: K.A.E. | |
| Minor child: D.V.G. | |
| Minor child: K.A.G. | Complaint: 42 U.S.C. 1983 |
| Minor child: D.A.G. | |
| Minor child: K.G.E. | |
| Minor child: L.D.E. | |
| Minor child: K.I.E. | |
| | |
| Plaintiff | TRIAL BY JURY DEMANDED |
| | |
| vs. | |
| | |
| COUNTY OF RUSSELL, CITY OF PHENIX CITY, | Deposited in U.S. mail |
| ZACHARY COLLINS, GREGORY WARD, KELDIN | on 7/30/19 |
| JONES, NANCY BUCKNER, STEPHANIE GILLISPIE, | |
| HEATH TAYLOR, ANGELA WHITNEY, SIDNEY | |
| LANDREAU, FLORENCE BELLAMY, | |
| CHERRY JONES, FLORENCE BELLAMY, JEANNA | |
| ROSS, NANCY BUCKNER, DOES 1 - 25 | |
| | |
| Defendant | |

## I.

## JURISDICTION AND VENUE

1.      Plaintiffs bring this lawsuit pursuant to 42 U.S.C. Section 1983 to redress the deprivation by

defendants, at all times acting under color of state law, of rights secured to Plaintiffs under the United

States Constitution, including the First, Fourth, Fifth, Ninth, Thirteenth and Fourteenth Amendments.

2.      Jurisdiction is conferred on this Court by 28 U.S.C. section 1343 (3) and 1343 (4), which

provides for original jurisdiction in this Court of all suits brought pursuant to 42 U.S.C. 1983. Jurisdiction is also conferred by 28 U.S.C. 1331 (a) because claims for relief derive from the United States Constitution and the laws of the United States.

3.      This Court has supplemental jurisdiction over Plaintiffs' state law causes of action pursuant to 28 U.S.C. § 1367(a).

4.      Venue properly lies in the Middle District of Alabama , in that the events and circumstances herein alleged occurred in the County Russell, Alabama and at least one defendant resides in the County of Russell Alabama.

5.      Plaintiff has exhausted his remedies, or otherwise complied with state law requirements for the filing of appropriate notices of tort causes of action against defendants pursuant to state law, inclusive of the filing of a Tort Claim Notice pursuant to Section 6-5-20; Section 11-12-8; and Section 11-47-23 Code of Alabama.

## II. PARTIES

6.      Plaintiff Dammuon Epps (hereinafter, Mr. Epps) at all times relevant herein, was a resident of the County of Russell, and the lawful biological parent of two daughters: K.A.G. (age 8 at the inception of the events of October 1, 2014) and L.D.E. (age 17 months at the inception of the events of October 1, 2014); and five sons: K.A.E. (age 12 at the inception of the events of October 1, 2014), D.V.G. (age 9 at the inception of the events of October 1, 2014), D.A.G. (age 6 at the inception of the events of October 1, 2014), K.G.E. (age 4 at the inception of the events of October 1, 2014) and K.I.E. (2 weeks old at the inception of the events of June 16, 2016). The children's full names are known to all defendants, and are being withheld herein, unless otherwise ordered by the court, to provide them some level of confidentiality. The Plaintiffs are often referred to collectively herein as "parents." Prior to the removal of the children from the parents on November 6, 2014 and June 6, 2016, as detailed hereinbelow, the parents raised, nurtured, provided guidance, education, and care, for the minor children, in a loving, emotionally,

academically, and financially supportive, intact nuclear family.

7.      Minor Plaintiffs K.A.G, L.D.E., K.A.E, D.V.G, D.A.G., K.G.E., K.I.E., Plaintiffs herein, are represented by Mr. Epps as Guardian Ad Litem, and/or Mr. Epps has applied to this court for appointment as the childrens' Guardian Ad Litem. The children will collectively be referred to herein on occasion as "the children" and/or "minor Plaintiffs." They will also be included in the references to "Plaintiffs" as used herein, as indicated by the context and circumstances in which the term "Plaintiffs" is used.

8.      Defendant COUNTY OF RUSSELL, ("COUNTY"), is a municipality in corporate form, organized, and existing under the laws of the State of Alabama, and has administrative subunits thereof, the RUSSELL COUNTY CHILDREN'S POLICY COUNCIL, (hereinafter "RCCPC" and/or "Council"), and the RUSSELL COUNTY DEPARTMENT OF HUMAN RESOURCES, (hereinafter "RCDHR" and/or referred to as "Agency"), which will collectively be referred to herein as COUNTY.  RCCPC and RCDHR are each county governmental agencies, which are organized, and acting pursuant to the law and policies of defendant COUNTY, which together with COUNTY, promulgated, encouraged, and/or permitted, the policies, patterns, and practices under which the individual defendants, and Does 1 – 25, committed the acts, or omissions complained of herein, and condoned, ratified, and encouraged the conduct of the COUNTY employee/agent defendants as complained of herein, or failed to train, or inadequately trained the COUNTY employee/agent-defendants.

9.      Plaintiff hereby sues all agencies and departmental units of COUNTY specified hereinabove under the designation of COUNTY herein, but may designate RCCPC, and/or RCDHR as appropriate in the context of the situation or circumstances being described.

10.     As formulators of general policies, rules, and regulations governing RCCPC, RCDHR and "CPS Prevention Assessment", COUNTY had primary responsibility for the direction, hiring, training, education, regulation, and supervision of the employees, agents, social workers, including supervisors and directors, of said local agencies, and/or departments, and Plaintiffs are informed and believe that it was

COUNTY which promulgated, encouraged, coordinated, administered and/or permitted the policies, customs, and/or procedures under which the individual defendants committed the acts, or omissions contained herein.

11.     Defendant CITY OF PHENIX, ("CITY"), is a municipality in corporate form, organized, and existing under the laws of the State of Alabama, that has promulgated, encouraged, and/or permitted, the policies, patterns, and practices under which the individual defendants and Does 1-25 committed the acts, or omissions complained of herein, and condoned, ratified and encouraged the conduct of the CITY employee-defendants and agents, as complained of herein, or failed to train, or inadequately trained the CITY employee-defendants.

12.     In addition, CITY had as a law enforcement subunit thereof, the PHENIX CITY POLICE DEPARTMENT (hereinafter "PCPD").

13.     As an entity within RCCPC, Defendant CITY, at all times relevant, was involved in the creation, and implementation of the policies and patterns of RCCPC complained of herein, and Plaintiffs are informed, and believe, and thereon allege that it was CITY, in conjunction with COUNTY, which promulgated, encouraged, administered, and/or permitted, the policies, practices, customs, and procedures under which the individual defendant employees/agents of COUNTY and CITY committed the acts, or omissions complained of herein.

14.     Plaintiffs hereby sue all agencies and departmental units of CITY specified hereinabove under the designation of CITY herein, but may designate PCPD as appropriate in the context of the situation or circumstances being described.

15.     Defendant Nancy Buckner, (hereinafter "BUCKNER"), is being sued in her individual, and official capacity as an Officer within DECE's Alabama Children's Policy Council, (hereinafter "ACPC"). As a part of her duty within the Alabama Children's Policy Council, BUCKNER managed, coordinated, promulgated, encouraged, and /permitted the policies, patterns, and practices under which the individual

defendants and Does 1-25 committed the acts, or omissions complained of herein, and condoned, ratified, and encouraged the conduct of the Defendants to execute the practices and policies of RCCPC complained of herein in furtherance of those duties.

16.     Defendant Jeanna Ross, (hereinafter "ROSS"), is being sued in her individual, and official capacity as Chair of ACPC and Secretary of the Department of Early Childhood Education. As Secretary of DECE, and Chair of ACPC, ROSS managed, coordinated, promulgated, encouraged, and/or permitted the policies, patterns, and practices under which the individual defendants and Does 1-25 committed the acts, or omissions complained of herein, and condoned, ratified, and/or encouraged the conduct of the Defendants complained of herein in furtherance of duties associated with ACPC and DECE.

17.     As managers, and individuals responsible for the supervision, and oversight of RCCPC, BUCKNER and ROSS had primary responsibility for the direction, hiring, training, education, regulation, and supervision of the RCCPC officers and agents, including RCCPC Chairman, and Plaintiffs are informed, and believe, that it was ROSS and BUCKNER, in conjunction with CITY and COUNTY, who promulgated, encouraged, coordinated, administered and/or permitted the policies, customs, and/or procedures under which the individual defendants, COUNTY and CITY, committed the acts or omissions contained herein.

18.     Plaintiffs allege DECE, COUNTY, and CITY, either intentionally, or recklessly, whether as a result of policies, practices, customs, or procedures, ("policies"), or as a result of ineffective, non-existent, or inadequate training and education of employees and agents, ("training"), caused the individually named employee/agent-defendants to engage in the actions, or inactions complained of herein, and such policies and training were a moving force responsible for the acts or omissions of said individually named defendant employees and the violations of the rights of the Plaintiffs as complained of herein.

19.     Plaintiffs are informed and believe, and thereon allege that DECE, COUNTY, and CITY, have a policy, pattern, practice, custom, or procedure, ("policy"), which contains the following features

constituting a deliberate indifference to the rights and safety of families such as Plaintiff's family who reside in the County of Russell;

- A policy authorizing, and/or ratifying, without threat of discipline, reprimand, or correction, the organization, implementation, and operation of Family Dependency Court, whose procedures, patterns and practices involve predetermined adjudications of dependency with RCCPC Chairman presiding over juvenile proceedings in the complete absence of jurisdiction, upon petition by RCDHR Protective Services Personnel without standing to initiate such dependency action, for the purpose of expanding the capacity of COUNTY and local agencies to interfere with the familial integrity of families residing in the county through court intervention without the presence of imminent danger, abandonment or imminent risk;

- A policy authorizing, and/or ratifying without threat of discipline, reprimand or correction the repeated removal of children from their parents or guardians without a warrant, consent, or imminent risk of serious bodily injury to a child[ren] such that would justify or make lawful the removal of the child,

- A policy authorizing, and/or ratifying without threat of discipline, reprimand, or correction,  the refusal of RCDHR employees, agents and assigns to fulfill their duty to modify and/or lift the orders which are known to impose requirements inconsistent with best practice;

- A policy authorizing, or ratifying, without threat of discipline, reprimand, or correction, the inclusion of false statements, half-truths, and misrepresentations in reports created for the purposes depriving the Plaintiffs of familial association, as well as the intentional failure to include information which is exculpatory to the proposition that "detention" of the children is necessary for their protection,

- A policy authorizing, and/or ratifying the creation, and repeated use of "DHR Dependency Courts", which are incapable of providing impartiality, fair proceedings, disinterested adjudicators of fact, due process or judicial review for the purpose of removing children from the custody of their parents without warrant, consent, or imminent risk of serious bodily injury to a child[ren] such that would justify or make

lawful the removal of the child;

- A policy authorizing, or ratifying the use RCDHR's investigative powers to coerce, threaten, and traffic children into voluntary children's programs and services against the wishes of fit parents and best interest of the children and without the presence of abuse and/or neglect as such that would justify or make lawful use of RCDHR investigative powers;

- A policy of depriving parents and children of familial association in predetermined proceedings without the presence of danger, abuse, neglect, or risk, as defined by law, so that parents will be compelled to agree to lesser allegations with lesser consequences to the continuation of the parent-child relationship rather than contest the necessity of juvenile dependency court jurisdiction and the continued involvement of RCDHR in the family's life; and

- A policy of restricting familial association and terminating parental rights in predetermined proceedings without due process, judicial review, or reasonable efforts, when parents fail to waive rights to privacy, refuse children services, or seek redress in actions independent of RCCPC's Dependency Court;

20.      Plaintiff is informed and believes, and thereon alleges, that DECE, COUNTY and CITY have no training, or inadequate training, on:

- the scope, nature, and importance of the 14th Amendment based rights of familial association, including not only the right to raise and care for one's child without unreasonable government interference, and the right of parents to refuse services, immunizations, and/or other medical treatment, and to receive advance notice of any medical testing, evaluation, or provision of services for their children, and to attend any medical procedures for their children in the care of COUNTY;

- the scope of the separation of powers doctrine for the State, the prohibitions and limitations of extrajudicial activities and appointments, Judicial Cannons connected to extrajudicial activities;

- the nature, extent, and duration of psychological and emotional damage caused to children and parents by the unlawful and/or unreasonable intervention of government actors acting under the guise of

protecting children, including but not limited to: 1.) the baseless, unreasonable, unlawful removal of

children from their parents; 2.) the inclusion of false and misleading statements, as well as; 3.) utilizing

mock juvenile dependency court orders and reports, in an effort to portray the parents, child, and

circumstances in a false light in order to influence grant appropriations, and to retain custody of children;

4.) the use of threats, intimidation, and coercion to force parents to waive their rights, including threats of

the removal of children and including unfavorable and false statements, as well as misrepresentation of

facts (i.e. "half-truths") in reports submitted to Family Dependency Court for the purpose of insuring and

continuing the separation of family members to their detriment and in violation of their rights under both

state and federal law;

- the reasons behind, the existence of, and the use of protective custody warrants and investigations

pursuant to Alabama law specifically, and the use of warrants generally when considering the removal of

children from their parents/caretakers that are not at imminent risk of serious bodily injury; and

- the existence and relevance of federal laws and aprecedent on the removal of children from their parents

/ guardians in the context of an investigation of a child abuse or neglect referral.

21.     Defendant Zach Collins ("COLLINS"), whose acts as alleged herein were performed under color

of state law, is being sued in his individual capacity and official capacity as chair of RCCPC, and at all

times relevant thereto, committed said acts pursuant to his duties as RCCPC chairman. COLLINS' acts

were at all times material hereto and upon information and belief, related to his duties as RCCPC

chairman. As a part of his duties as chair of the RCCPC, COLLINS promulgated, encouraged, and

permitted the policies, patterns, and practices under which the individual defendants and Does 1-25

committed the acts, or omissions complained of herein, and condoned, ratified, and encouraged the

conduct of the Defendants and Does 1-25 complained of herein, between the dates November 1, 2016 to

present.

22.     Plaintiffs are informed and believe that COLLINS, in complete absence of jurisdiction, directed

GILLISPIE, WARD, and DOES 1-25, and conferred with them during "investigations" of Plaintiffs in

November 2016, and on April 11, 2017, and that he participated in the decision to investigate Mr. Epps

without an allegation of abuse or neglect and/or otherwise condoned, or agreed with GILLISPIE and

DOES 1-25 in spite of the absence of exigent circumstances, medical emergencies, immediate danger, or

belief that any criminal activity was occurring or afoot for the purposes of providing probable cause for a

search, and participated in the decision to terminate the parental rights of Mr. Epps without judicial

review or reasonable efforts, such that would make the termination lawful and search as described

hereinbelow.

23.    Defendant Sidney Landreau, ("LANDREAU"), whose acts as alleged herein were performed

under color of state law, is being sued in his individual capacity and official capacity as chair of RCCPC,

and at all times relevant thereto, committed said acts pursuant to his duties as RCCPC chairman.

LANDREAU's acts were at all times material hereto and upon information and belief, related to his duties

as RCCPC chairman. As a part of his duties as chair of the RCCPC, LANDREAU promulgated,

encouraged, and permitted the policies, patterns, and practices under which the individual defendants and

Does 1-25, committed the acts or omissions complained of herein, and condoned, ratified, and encouraged

the conduct of the Defendants and Does 1-25 complained of herein between the dates October 1, 2014 to

October 2016 .

24.    Plaintiffs are informed and believe that LANDREAU, in complete absence of jurisdiction,

directed K. JONES, BELLAMY, WHATLEY, GILLISPIE, POLES, WARD, and DOES 1-25, and

conferred with them during the "investigation" of my home on October 1, 2014 through October 2016,

and that he participated in the decision to remove, or otherwise condoned, agreed with K. JONES,

BELLAMY, WHITLEY, GILLISPIE, POLES, and DOES on the removal of the minor children, and/or

ratified the removal after it occurred in spite of the absence of exigent circumstances or believed criminal

activity occurring or afoot, as described hereinbelow.

25.     Defendant Health Taylor, (hereinafter, "TAYLOR"), whose acts as alleged herein were performed under color of state law, is being sued in his individual capacity and official capacity as Officer of RCCPC, and at all times relevant thereto, committed said acts pursuant to his duties as RCCPC chairman. TAYLOR's acts were at all times material hereto and upon information and belief, related to his duties as RCCPC chairman. As a part of his duties as an Officer of RCCPC, TAYLOR promulgated, encouraged, and permitted the policies, patterns, and practices under which the individual defendants and Does 1-25, committed the acts or omissions complained of herein, and condoned, ratified, and encouraged the conduct of the Defendants and Does 1-25 complained of herein between the dates October 1, 2014 to October 2016 .

26.     Plaintiffs are informed and believe that TAYLOR directed the individual RCSO Defendants and DOES 1-25, and conferred with them during the "investigation" of my home and children on NOvember 6, 2014 and April 11, 2018, and that he participated in the decision to remove, or otherwise condoned, and /or agreed with COUNTY on the removal of the minor children, and/or ratified the removal after it occurred, despite the absence of exigent circumstances, immediate danger, or believed criminal activity occurring or afoot, as described hereinbelow adn his failure to investigate anything..

27.     Defendant Stephanie Gillispie, ("GILLISPIE"), whose acts are alleged herein were performed under color of state law, was at all times material hereto, upon Plaintiffs' information and belief, a social worker, employed by RCDHR and the declarant under oath for the filing of petitions in the RCCPC Family Dependency Drug Court matter involving the plaintiffs herein, which contained allegations which were false, and/or made with knowledge of their falsity or reckless disregard for their truth or falsity.

28.     Defendant Keldin Jones, ("K. JONES"), whose acts are alleged herein were performed under color of state law, was at all times material hereto, upon Plaintiffs' information and belief, a social worker, employed by RCDHR, and the declarant under oath for the filing of the initial Petition in the RCCPC Family Dependency Court matter involving the plaintiffs herein, which contained allegations which were

false, and/or made with knowledge of their falsity or reckless disregard for their truth or falsity.

29.     Defendant Florence Bellamy, (hereinafter "BELLAMY"), whose acts are alleged herein were performed under color of state law, was at all times material hereto, upon Plaintiffs' information and belief, a social worker, employed by RCDHR, and a supervisor of other social workers, including K. JONES.

30.     Plaintiffs are informed and believe, that BELLAMY was the supervisor that K. JONES conferred with during her "investigation" of my home on October 1, 2014 through January 2015, and that she participated in the decision to remove, or otherwise condoned, agreed with K. JONES on the removal of the minor children, and/or ratified the removal after it occurred, despite her failure to "investigate" anything, and in spite of the absence of exigent circumstances, immediate danger, or belief that criminal activity was occurring or afoot, as described hereinbelow. Upon information and belief, at all times relevant hereto, BELLAMY held herself out to be a social worker despite not having the license required to practice social work.

31.     Defendant Angela Whatley, (hereinafter "WHATLEY"), whose acts are alleged herein were performed under color of state law, was at all times material hereto, upon Plaintiffs' information and belief, a social worker, employed by RCDHR, and a supervisor of other social workers, including K. JONES and GILLISPIE.

32.     Plaintiffs are informed and believe that WHITLEY was the supervisor that K. JONES and GILLISPIE conferred with during her "investigation" of my family from around or about January 2015 through July of 2016, and that she participated in the decision to remove, or otherwise condoned, or agreed with K. JONES and GIILISPIE on the removal of the minor children, and/or ratified the removal after it occurred, despite her failure to "investigate" anything, and in spite of the absence of exigent circumstances, immediate danger, or believed criminal activity occurring or afoot, as described hereinbelow. Upon information and belief, at all times relevant hereto, WHITLEY held herself out to be a

social worker despite not having the license required to practice social work.

33. Defendant Cherry Jones, (hereinafter "C. JONES"), whose acts are alleged herein were performed under color of state law, was at all times material hereto, upon Plaintiffs' information and belief, a director of RCDHR, and a supervisor of other social workers, including K. JONES, GILLISPIE, BELLAMY, WHITLEY, POLES, and does 1-25. C. JONES, in conjunction with COUNTY, was also primarily responsible for the hiring, training, education, regulation and supervision of RCDHR social workers, including supervision of such employees through the agency of Russell County Board of Human Resources, and Plaintiffs are informed, and believe, and thereon allege, that it was C. JONES, with the approval and sanction of COUNTY, which promulgated, encouraged, administered, and/or permitted, the policies, practices, customs, and procedures under which the individual defendant employees of RCDHR committed the acts or omissions, and failures to train complained of herein.

34. Plaintiffs are informed and believe that C. JONES directed K. JONES, BELLAMY, WHITLEY, GILLISPIE, POLES and DOES 1-25, and conferred with them during the "investigation" of my home on October 1, 2014 through July 2016, and that she participated in the decision to remove, or otherwise condoned, and /or agreed with K. JONES, BELLAMY, WHITLEY, GILLISPIE, POLES, and DOES 1-25 on the removal of the minor children, and/or ratified the removal after it occurred, despite her failure to "investigate" anything, and in spite of the absence of exigent circumstances, immediate danger, or believed criminal activity occurring or afoot, as described hereinbelow.

35. Defendant Gregory Ward, (hereinafter, "WARD"), whose acts are alleged herein were performed under color of state law, was at all times material hereto, upon Plaintiffs' information and belief, a private attorney acting on behalf of COUNTY, and that he participated in the decision to remove, or otherwise condoned and/or agreed with K. JONES, BELLAMY, WHITLEY, GILLISPIE, POLES, and DOES 1-25 on the removal of the minor children, and/or ratified the removal after it occurred, despite his failure to "investigate" anything, in spite of the absence of exigent circumstances, immediate danger, or believed

criminal activity occurring or afoot, as described hereinbelow and despite state law prohibitions on the representations of state agencies in courts of the state by private attorneys.

36.     Plaintiffs are informed, and believe, and thereon allege, that WARD knowingly held himself out to be a legitimate agent of the State, empowered to attend sessions of court to discharge the business of State of Alabama or represent agencies of the State in courts knowing that those powers are expressly reserved for the Office of District Attorney and the Office of Attorney General exclusively and that he did not possess any certifications or appointments therefrom that could empower him in th exercise of those reserved powers.

37.     Plaintiffs are informed and believe, and thereon allege, that at all times herein mentioned, each and every defendant/agent employee of the COUNTY, CITY, DECE, ACPC, or RCCPC was the agent and/or employee of their codefendants, and was acting either in their individual capacity or in the scope, purpose and authority of COUNTY, DECE, CITY, ACPC and RCCPC, and/or in their employment or agency with said entities, and with the knowledge, permission, ratification, and/or consent of said co-defendants and/or entities.

38.     Plaintiffs are informed and believe, and thereon allege, that each of the named individual defendants herein, did knowingly and willingly, with a common intent and scheme set forth in further detail herein below, conspire to injure Plaintiffs, and deprive Plaintiffs of their rights, liberties, and interests, as such rights are afforded under the United States Constitution and the Alabama State Constitution, and conspired generally to damage said Plaintiffs and inflict great injury upon them.

## III. FACTS

### RCDHR'S FIRST ATTEMPTED UNWARRANTED SEARCH AND SEIZURE

37.     As local government agencies involved in the administration of children services within the State of Alabama, RCDHR and RCCPC are part of a unified system, implemented by DECE, that includes a comprehensive and coordinated effort to provide services to children and parents. According to DECE,

this system consolidates existing state needs assessments to develop a strategic plan that makes it easier to collaborate and coordinate among existing programs of early childhood care and education in a mixed delivery system across the State. According to DECE, these needs assessments, and the processes attached thereto, are the **driving force** for children's policies, following a pattern that allows each individual county to "make a real difference in the lives of their children." Programs and services included in this unified system include but are not limited to the following:

      a.  Juvenile Drug Court and Juvenile Mental Health Court-

      b.  Career Fairs and GED training

      c.  Parenting classes for teens and adults

      d.  Comprehensive Resource Directories

      e.  Juvenile Redirection Program as an alternative for first time juvenile offenders.

38.     On information and belief, from 2000 to present, RCCPC, and its policies, programs, officers, agents, employees and assigns, have operated in collaboration to serve COUNTY. The action steps, programs, and policies of local agencies, including but not limited to RCDHR, governed by RCCPC include but are not limited to:

      a.  Needs Assessments

      b.  Juvenile Drug Court

      c.  DHR truancy assessment

      d.  DHR dependency screening

      e.  Dependency Drug Court

      f.  Children in Need of Services (CHINS) Program / Prevention

      g.  Adoption

      h.  Foster Parent Licensing

      i.  Child Support

      j.   DHR child abuse and neglect

      k.   Family Court/ Family Dependency Court / Drug Court

      l.   Child custody

      m.  Family Reunification

39.     Pursuant to 26-24-33 Code of Alabama 1975, RCCPC's officers, agents, employees and assigns include but are not limited to:

      a.   A juvenile court judge in each county;

      b.   the county director of the Department of Human Resources;

      c.   a county representative of the Department of Mental Health;

      d.   a county representative of the Department of Youth Services;

      e.   the county superintendent of education and any city superintendent of education in the county;

      f.   the county chief juvenile probation officer;

      g.   a representative of the county health department;

      h.   the district attorney;

      i.   local legislators;

      j.   the chair of the county commission;

      k.   the sheriff,

      l.   and at least seven persons to be appointed by the county children's policy council from the community including, but not limited to, state and local government officials, practicing attorneys, community organizations, business and industry, and representatives of any other agencies or organizations providing services to families and children in the county.

40.     On October 1, 2014, at approximately 8:30 am, K. JONES and DOE #1 came to Mr. Epps' home,

unannounced requesting that his wife, (hereinafter, "Mrs. Epps"), allow an unwarranted search and seizure of the home. Mrs. Epps reports that neither K. JONES nor DOE #1 indicated that their visit was connected to any: (1) non-accidental physical or mental injury; (2) sexual abuse or exploitation; (3) negligent treatment or maltreatment including the failure to provide adequate food, medical treatment, clothing or shelter; (4) or any other as level of abuse of neglect as defined in the State Department of Human Resources (SDHR) Administrative Code rules for protective services or Section 26-14-1 through 26-14-13 Code of Alabama authorizing RCDHR's investigative duties.

41.     Mrs. Epps reports that K. JONES asked her to allow a search and seizure of the home and children, but she refused and requested that K. JONES and DOE #1 get a warrant for any search or seizure. She reports that K. JONES responded to the refusal of the unwarranted search by stating "the state grants us the power to come in and question your kids". Mrs. Epps says that DOE #1 then responded, "when we come, you are supposed to let us in." She states that she informed DOE #1 that she had a right to privacy and that she required a lawful warrant to search the home. She recalls that DOE #1 replied "really, we could have just brought the police from the beginning to do the questioning". Mrs. Epps states that she responded to DOE #1 saying "the police need a warrant too". Mrs. Epps says she continued to refuse the unwarranted search and seizure instructing K. JONES and DOE #1 to send something in writing explaining why they were at the home. She reports that K. JONES and DOE #1 stayed approximately 15 minutes leaving after she refused the unwarranted search.

42.     On or about October 4, 2014, Mrs. Epps received a correspondence from K. JONES and director of RCDHR, C. JONES, stating "Per your request. DHR is notifying you that a report was received concerning the welfare of your children. Keldin Jones needs to interview you, your children and do a home visit to help assess any needs your family may have. Please call her at (334)214-5809. Thank you for your cooperation." This correspondence did not contain the name of any child or children allegedly abused, the date or dates that any alleged abuse is thought to have occurred, or the substance of any

person's actions which are alleged to be abusive. No correspondence of this type was ever received by Mr. or Mrs. Epps within the first five (5) days after K. JONES and DOE #1's October 1, 2014 visit as required pursuant to SDHR rules or Section 26-14-7.1 Code of Alabama.'s due process requirements.

43.     On or about October 9, 2014, Mrs. Epps responded to K. JONES and C. JONES' correspondence. In the correspondence Mrs. Epps explained that she would not be submitting to an unwarranted search of her home or waiving any state, federally or internationally protected right to privacy and informed C. JONES and K. JONES that their correspondence was deficiencient in producing authority sufficient to compel her to allow a search against her wishes.

44.     On or about October 13, 2014, K. JONES contacted Mr. Epps via phone, in an attempt to convince him to allow an unwarranted search and seizure of the home. Mr. Epps declined K. JONES' solicitation and informed her that he reserved his right to privacy and did not wish any help or aid from RCDHR. Mr. Epps explained to K. JONES that state and federal laws protects his family from undue government interference and that if she didn't know the law she should ask the attorney general for the state to clarify those rights and responsibilities to her.

45.     On or about October 21, 2014, Mr. Epps' father-in-law informed Mr. and Mrs. Epps that C. JONES requested that he come our private residence to convince Mr. Epps and his wife to allow DHR to perform an unwarranted search and seizure their private dwelling. Both Mr. Epps and his wife informed him that they would not.

46.     On or about the morning of November 4, 2014, RCDHR received a notice of default from Mrs. Epps again notifying them that they had not provided any probable cause to support any submission to an search or seizure of the family without consent.

## THE FIRST "JUVENILE PETITION" AND REPORT

47.     Later in the evening of November 4, 2014 at or about 1830, a document (hereinafter referred to as Petition 1) having the appearance of a child dependency action summons was thrown on Mr. Epps'

property commanding the attendance of Mrs. Epps for a November 6, 2014, 0900 appearance at the

Russell County Courthouse. This left less than 36 hours to prepare a response, retain counsel, or gather

witnesses, despite the action apparently having been filed on October 14, 2014, and despite Mrs. Epps'

multiple request for some type of information about the agency's actions as required per their

administrative rules and statutory requirements regarding notice within 5 days of an investigation.

48.    The Petition 1 appeared be a juvenile proceeding utilizing the abbreviation "JU" as an identifier

prefixed to the case numbers and contained the threat of contempt of court for failure to attend.

49.    The first line of Petition 1 states "Comes now the undersigned <u>for the State of Alabama,</u> Russell

County Department of Human Resources, and files this petition." It was signed by K. Jones as RCDHR

and by Ward as counsel for RCDHR. The document did not indicate the presence of the District Attorney

or the Office of the Attorney General for the State of Alabama.

50.    At no time did Petition 1 allege that Mr. or Mrs. Epps or any other member of their household

committed or was about to commit some crime which posed an immediate danger, imminent risk or

conditions/circumstances of child abuse/ neglect per CA/N Allegations and Definitions (Alabama

Administrative Code 660-5-34) .

51.    The petition did contain allegations that were completely false, and K. JONES made the

allegations, sworn to under penalty of perjury, without having conducted a CA/N assessment or

investigation involving an interview of any member of the family regarding, without affording an

opportunity to contest the agency action in appeal as required law, without having filed any indicated

abuse or neglect report with the District Attorney, without any expressed authority from the State

legislature permitted RCDHR to initiate a dependency action and without any knowledge as to the truth,

accuracy, and/or falsity of the following allegations in the original Petition;

> a. "said child's parents, guardians and or other custodians are unable to discharge their responsibilities to and for the child, rendering said child dependent and in the need of supervision, treatment, rehabilitation, protection and/or care of the State of Alabama."

> b. "Said child is dependent pursuant to Ala. Code § 12-15-102 (8)(a)(2),(6) and (8)."

c. "That the child is dependent in Russell County, Alabama, pursuant to Ala. Code §
12-15-103(8)(a) in that the child is a child is a child whose parent, legal guardian, legal
custodian, or other custodian subjects the child or any other child in the household to
abandonment, abuse, or neglect as defined in subdivision (4) of section 12-15-301 (and
others), or allows the child to be so subjected, or who is dependent for any other reason."

d. "This mother has five children, and the father of each child is unknown."

e. "The mother has apparent mental health problems in that she claims diplomatic
immunity, and threatened to report DHR to the Hauge convention (dealing with war
crimes) as a defense."

f. "None of her children are in school, though each is school-age."

52.     At no time has any Defendant had in their possession a written evaluation from a mental health

professional nor did K. JONES or WARD ever allege any extreme or aberrant behavior stemming from

severe impairment to a child's function as required for the purpose of screening and accepting reports of

child abuse/neglect received by the RCDHR (Alabama Administrative Code 660-5-34-.02(3)(c).).

Despite this requirement of a report and despite K. JONES, C. JONES and WARD lack of a report, K.

JONES, and WARD averred and/or attempted to lead the Family Dependency Drug Court to believe that

mother has apparent mental health problems despite having no facts in support of such proposition.

53.     K. JONES, and WARD, in conjunction with the filing of the original petition, and intended by

them for review by RCCPC Court at the first court hearing and provided to the court prior to the hearing,

filed a report (signed on October 3, 2014) on October 15, 2014. It is entitled Affidavit of Efforts and

Child Custody Proceeding Affidavit and is alleged to have been sworn to before a Magistrate to be true.

This document was not served with the petition on November 4, 2014 and did not become known to the

Plaintiffs until much later.

54.     Among the specific lies and misrepresentations included in the Affidavit of Efforts and Child

Custody Proceeding Affidavit - this list is not exhaustive- were the following items:

a. "Said child is also in immediate or threatened danger of physical and/or emotional harm
in that DHR received a report of concern for the children's welfare, mother will not allow
DHR access to the children and should be removed."

55.     This Affidavit of Efforts by K. JONES and WARD also did not allege and

conditions/circumstances of child abuse/ neglect per CA/N Allegations and Definitions.

56.     Despite being refused a search and seizure of the home on every occasion, at no time did K.

JONES, DOE #1 or WARD petition a court of competent jurisdiction pursuant to Section 26-14-7 Code of

Alabama 1975 for the purposes of protecting the PLAINTIFFS state and federal law right to privacy by

compelling Mr. or Mrs. Epps to allow the investigation to take place only after a showing of reasonable or

probable cause to believe that a crime is being, or is about to be committed, so that facts based on

knowledge could be alleged in any anticipated court intervention. Despite greater than thirty days passing

between K. JONES and DOE #1's initial visit and the removal of the children from Mr. and Mrs. Epps'

custody, none of the PLAINTIFFS nor Mrs. Epps received any timely notice of a CA N assessment or any

conclusion thereof which might have been subject to an appeal and prevented the minor Plaintiffs removal

(Alabama Administrative Code 660-5-34-.08).

57.     On information and belief, K. JONES, C. JONES nor WARD ever received any report that could

prompt investigative duties conferred upon RCDHR through statute.

58.     Despite the allegations in Petition 1 and Affidavits of Efforts by K. JONES and WARD being

deficient of conditions/circumstances of child abuse/ neglect per CA/N Allegations and Definitions, K.

JONES and WARD sought Court Intervention to force the PLAINTIFF's involuntary acceptance of

protective services without the presence of immediate danger of physical or emotional harm to a child;

without parents who are unwilling or unable to provide for the needs of the minor Plaintiffs, without

abandonment, or an imminent risk of serious harm, or an already existent non-foster care safety plan, and

despite SDHR policy providing that on-going protective services is voluntary unless a safety threat exists

(Alabama Administrative Code 660-5-34-.13(5); 660-5-34-.14(2) and (3).). At no time was any safety

threat present with regard to K. JONES and WARDS allegations.

## THE FIRST HEARING

59.    According to 2015 Annual Report for the Alabama Administrative Office of Courts, (hereinafter AAOC), "The Family Court Division provides services in seven different, but related, areas **for** the Alabama judicial system. Those areas include: • Unified Family Courts • Juvenile Probation Services • Access and Visitation Grant Program • Court Improvement Program Grants • Judicial Volunteer Program • Child Support/Referees • Violence Against Women Act (VAWA)." With a stated goal of providing "a wide array of services so that the juvenile and family courts can be **more** efficient and **effective** for families and children in Alabama", family courts have partnered with executives agencies to streamline juvenile policies, procedures and processes for faster dependency and permanency outcomes, according to the report. The AOC 2015 report lists DHR as an agency actively collaborating with AOC on this work.

60.    According to the 2013 for Russell County Children's Policy Council Needs Assessment, the Russell County Dependency Drug Court was established and began operating under the coordinated effort of multiple local agencies, state court and county officials. According to the assessment, Dependency Drug Court is routinely utilized to screen RCDHR dependency cases. Despite screening being a component of SDHR and its agents executive and administrative duties related to CA/N assessment and investigation, the RCCPC, under the direction COUNTY, BUCKNER, CITY and ROSS, have created a policy of utilizing Family Dependency Drugs Courts to perform Child Protective Services Investigations.

61.    According to the 2016 Russell County Children's Policy Council Needs Assessment, RCCPC's "Family Dependency /Drug Court" was chosen as 1 of only 5 Pilot Sites in the State of Alabama to implement a new coordinated plan to serve families in the child welfare system (**or at risk** of going into the system) affected by substance abuse and/**or** co-occurring disorders more effectively and improve child and family outcomes." According to the U.S. Department of Justice's Statewide System Improvement Program Publications, Drug courts such as RCCPC Family Dependency Drug Court, function to "**expand the capacity** of state agencies to intervene with parents substance use and/**or** co-co-occuring conditions". According to the U.S. Department of Health and Human Services (DHHS)' s, Substance Abuse and

Mental Health Services Administration (SAMHSA), which provides grants to Drug Courts throughout Alabama, these "and/**or**" co-occurring conditions include lower-socioeconomic status, increased difficulties in academic and social settings and family functioning and fewer household resources[1]. This pattern and coordinated effort by DECE, RCDHR, COUNTY, CITY, SDHR, law enforcement, juvenile judges and other local agencies, to expand the power to Family Dependency Drug Courts to include investigations, and the ability to expand government intrusions into family life beyond the narrowly tailored compelling state interest upon which the use of such police powers is predicated under federal law, has become ingrained in the fabric of child protective services within Russell County, despite an abundance of issue regarding separation of powers, partiality of juvenile tribunals, the evading of due process provisions enacted through use of CA/N assessment (Alabama Administrative Code 660-5-34-.08), and despite the risk of damage to the public confidence in the courts once these little known policies and practices are discovered by the citizenry of the State.

62.     Through the use of Family Dependency Drug Courts, the PLAINTIFFS were subjected to legal coercion for their refusal to voluntarily accept protective services, despite SDHR policy providing that use of on-going services being voluntary when conditions/circumstances do not constitute child abuse/ neglect per CA/N Allegations and Definitions.

63.     On information and belief, Defendants K. JONES, C. JONES, WARD, and BELLAMY, new that LANDREAU was an Officer within RCCPC, and that at all times relevant to the facts herein, LANDREAU was agent of COUNTY incapable of rendering an impartial adjudications regarding any prosecutive by child protective services. With knowledge of LANREAU's conflicts of interest, K. JONES and WARD filed the dependency action in the RCCPC Family Dependency / Drug Court to force Plaintiffs involuntary acceptance of Protective Services, despite PLAINTIFF"S consistent refusal of

---

[1] See. DHHS Substance Abuse and Mental Health Services Administration (SAMHSA): "The CBHSQ Report" https://www.samhsa.gov/data/sites/default/files/report_3223/ShortReport-3223.html

services and despite the absence of conditions/circumstances constituting child abuse/ neglect per CA/N Allegations and Definitions and the despite the absence of immediate harm or imminent risk. The timestamp on the document suggest that it was filed on October 15, 2014 at 11:02 am in Russell County, Alabama, 14 days after K. JONES and DOE #1's first attempted unwarranted search and seizure despite.

64.     At all times relevant between the dates of October 1, 2014 to August of 2016, Defendant LANDREAU served as Chairman for RCCPC in service to COUNTY, utilizing the office to expand the ability of agencies to involuntarily force services through its DHR Screening Policy, in direct conflict with state law.

65.     At all times relevant, LANDREAU, was presiding over and issuing orders in complete absence of jurisdiction, as an RCCPC Chairman for COUNTY, who ipso facto vacated his judicial post through acceptance of and service in the Office of Russell County Children's Policy Council Chairman prior to October 1, 2014, within Family Dependency Drug Court, and at no time during the relevant facts did LANDREAU disclose his acceptance of office of RCCPC or his conflicts of interest.

66.     Despite the fact that RCDHR was moving the "Family Court" Juvenile proceeding in District Court as an agency of the State, which per Amendment 328 Section 6.04(b) of the Alabama Constitution may only receive original review of their actions in the Circuit Courts of the State, RCCPC Chairman LANDREAU, in complete absence of jurisdiction, heard the action and wrote the unlawful orders for the removal of Mr. Epps' children. Pursuant to Alabama Rules of Judicial Procedure Rule 2, "When a juvenile court judge is a circuit court judge, the juvenile court judge shall have and exercise full jurisdiction and power of the juvenile court and of the circuit court of the State. When a juvenile court judge is a district court judge, the juvenile court judge shall have and exercise full jurisdiction and power of the juvenile court and of the district court of the State." At all times relevant, LANDREAU held himself out to be a District Court Judge presiding over a Juvenile (non-Domestic Relations case) which had been filed by a state agency moving within the courts of the state. At no time was LANDREAU ever

acting in any ex-officio Circuit Court Judge Capacity. Even if it could be rationally argued that the legislature intended to include juvenile cases among those Domestic Relations cases in District Court Judges may serve as an ex-officio Circuit Court Judge, Defendant LANDREAU was still in complete absence of jurisdiction related to his acceptance of the Office of Chairman of RCCPC, an office that ipso facto vacates any prior judicial post due to incompatibilities created by Amendment 328 Section 6.08(b) of the Alabama Constitution 1901.

67.     At all times relevant, RCDHR and RCCPC's coordinated efforts worked to streamline dependency procedures to follow a pattern of irregular procedures and unlawful expansions of delegated authority including but not limited to:

a.  The utilization of Court Intervention by Protective Services without immediate danger or medical emergency present in excess of State law, rules and regulations.

b.  Subjecting parents the involuntary acceptance of services without conditions or circumstances that constitute child abuse / neglect per CA/N Allegations and Definitions, or imminent risk of danger, or exigent circumstances, expanding those Allegations and Definitions to include lower-socioeconomic status; increased difficulties in academic studies, social settings and family functioning; and few household resources despite their being no narrowly tailored statute or compelling government interest associated with these conditions that overcome the strong state and federal protections afforded to the Plaintiffs' familial integrity.

c.  Expanding the powers of the Office of Russell County Children's Policy Council Chairman to include powers reserved exclusively for the Judicial Branch of Government in blatant disregard for constitutional, statutory and judicial rules governing the operation of the judicial branch.

d.  Foregoing due process requirements mandated for RCDHR investigations

    e.   Foregoing warrant requirements for law enforcement

    f.   Utilizing private attorneys to prosecute actions in representation of the state to remove children from the custody of their parents

    g.   Expanding the capacity of District Court Juvenile Judges to also exercise Circuit Court powers in juvenile Proceedings in complete absence of jurisdiction.

    h.   Expanding the capacity of RCDHR social workers to include the filing "dependency actions", without expressly granted authority from the legislature, without conducting any investigation, without producing required evidence, and without the presence of the Office of District Attorney or Office of the Attorney General in attendance to these "dependency action" in which the state is allegedly involved.

68.    On or about the early morning of November 6, 2014, Mrs. Epps managed to complete a pleading in the short time allowed and left the children at home with Mr. Epps to attend the "hearing" at or about 08:00 am to avoid the threat of contempt noted on the "summons", but reported that her filings had been time-stamped and removed by a women reporting to be a "DHR court liaison" , DOE #2, at or about 08:38 am before the November 6, 2014 hearing began. Mrs. Epps reports Landreau would not allow her to defend against RCDHR's allegations and that her pleadings were not accepted upon timely request to the court clerk or the presiding officer over the Family Dependency Drug Court, LANDREAU, who confiscated the documents before taking recess, never filing the documents on any record. Mrs. Epps filings contain a motion to dismiss for lack of personal and subject matter jurisdiction, an objection to the timeliness of the hearing and an affidavit refuting the allegations of K. JONES as to dependency.

69.    Mrs. Epps reports that she was told to go into the hall after LANDREAU recessed where an Unknown Individual requested that she submit a urine sample for drug testing which Mrs. Epps refused. Mrs. Epps reports that she said that they waited in the hall for a while and then she was told to talk to Alford Harden (hereinafter HARDEN), judge of probate. Accompanying HARDEN was Defendant

BELLAMY who at that time was acting as supervisor to K. JONES. Mrs. Epps reports that she was never informed that an involuntary commitment proceeding was underway when HARDEN ordered the Sheriff's Deputies to escort Mrs. Epps to East Alabama Mental Health Outpatient for eval. Mrs. Epps was evaluated with no finding of danger to herself or others.

70.     Clinical Therapist Jessica Tyler reports that HARDEN solicited her and the Sheriff's deputies escorting Mrs. Epps to utter a forged instrument avering that Mrs. Epps presented a danger to herself and others after their was no finding of a danger. Jessica Tyler further reports that both her and the deputies refused and the deputies escorting her to utter that my wife was a danger to her and others and that HARDEN responded "I'll find someone". Mrs. Epps was subsequently involuntarily committed on petition by Lindsey Erwin, who was subsequently appointed as guardian ad litem by LANDREAU in the RCCPC Family Dependency / Drug Court proceeding.

71.     Mr. Epps nor his children attended the "hearing", as he never received any formal notice to appear although K. JONES reported that she had done an economic background on the family which should have contained information which revealed Mr. Epps as the father of the children and a resident in the home. Despite the presence of this information and despite K. JONES having spoke with Mr. Epps, K. JONES averred that the father of the children was unknown.

72.     Despite being a fit parent, on or about November 6, 2014 and after his wife was involuntarily committed, a full swat team was sent to detain Mr. Epps without warrant, probable cause or petition for any form of involuntary commitment. Mr. Epps was detained and brought to the office of the probate judge for an off the record meeting by Sheriff's deputies DOE #2, and DOE #3 where he was informed by the probate judge that if he did not do as the "court" wanted on November 7, 2014 in some sort of "hearing", that he was not going to get his kids back.

73.     Mr. Epps children were subsequently picked up by RCDHR and other DOES 4 - 7 at his brother's house on the basis of K. JONES and WARD's petition presided over by LANDREAU in the RCCPC

Family Dependency Drug Court after he had left them with a cousin to check on the whereabouts of his wife and being detained by RCSD swat on November 6, 2014 despite (1) K. JONES and WARD's failure to present any medical report to support any allegation of mental health danger; (2) despite K.. JONES and WARD's failure to produce a showing of reasonable or probable cause to believe that a crime is being or is about to be committed or a valid regulation is being or is about to be violated; (3) despite employees of RCDHR lacking standing to file a dependency action; (4) despite the absence of the office of the District Attorney in the prosecution of the action, (5) despite DHR conducting no investigation; and (6) despite LANDREAU possessing no judicial authority.

74.     Mr. Epps attended the proceeding under threats communicated by Harden on November 7, 2014 presided over by RCCPC Chairman LANDREAU. Despite never posing a danger and despite there being no allegation of any unfitness, abuse or neglect, as defined in DHR's administrative code, LANDREAU ordered that Mr. Epps be denied familial association with his children. At no time was Mr. Epps ever offered the representation of counsel at the hearing on November 7, 2014.

75.     Despite State law requirements that the District Attorney "prosecute and defend any civil action in the circuit court in the prosecution or defense of which the state is interested" and "attend each session of the court for which he is district attorney and to remain in the discharge of his duties until the business of the state is disposed of", at no time did the Office of the District Attorney for Russell County attend any of these hearing that K. JONES, WARD and LANDREAU which they claimed to be prosecuted on behalf of the State.

76.     Mrs. Epps was released from involuntary commitment on or about November 13, 2014. Mr. Epps and his wife subsequently attempted to remove the action to federal district court but had the removal dismissed.

77.     Mr. Epps and his wife continued to file numerous pro se actions in state and federal court seeking a vindication of rights which were never heard on the merits.

THE FIRST ORDER KNOWN TO THE PLAINTIFFS

78.     The First order known to the Plaintiffs, signed by Defendant LANDREAU on November 20,

2014, refers to the hearings conducted on November 6, 2014 and November 7, 2014 as "shelter care

hearing". According to the U.S. Department of Justice, Office of Juvenile Justice and Delinquency

Prevention, the flow chart is as follows in sequential order:

> a.   Child is removed from the home
>
> b.   Petition filed within 48 hours of child being taken into custody
>
> c.   Initial/Detention hearing (Shelter Care) occurring soon as possible after petition is filed,
>      must be either the same day or the next court day
>
> d.   Jurisdiction Hearing- if the child is detained, this hearing occurings within 15 days of the
>      court's order detaining the child.
>
> e.   Dispositional Hearing- If the child is detained, this hearing occurs within 10 days of
>      Jurisdictional hearing
>
> f.   6 month review
>
> g.   Permanency Hearing
>
> h.   Selection and Implementation Hearing
>
> i.   Post-Permanency Review Hearing

79.     At no time before the filing of the petition filed on October 15, 2014 or November 6, 2014 had

the children ever been in the custody of RCDHR.

80.     No pickup orders for November 6, 2014 or November 7, 2014 has ever been produced, and

Plaintiffs have never seen any such order. On information and belief, at no time has RCDHR receive a

report consistent with its investigative duties codified at Title 26 Chapter 14.

81.     In the November 20, 2014 order, LANDREAU ordered the continued holding the children

without any presentation of the following requisite statutory findings:

> a.   The child has no parent, legal guardian, legal custodian, or other suitable person able to

provide supervision and care for the child.

b.  The release of the child would present a clear and substantial threat of a serious nature to the person or property of others and where the child is alleged to be delinquent.

c.  The release of the child would present a serious threat of substantial harm to the child.

d.  The child has a history of failing to appear for hearings before the juvenile court.

e.  The child is alleged to be delinquent for possessing a pistol, short-barreled rifle, or short-barreled shotgun, in which case the child may be detained in a juvenile detention facility until the hearing required by Section 12-15-207. Pistol as used in this section shall be as defined in subdivision (1) of Section 13A-11-70. Short-barreled rifle and short-barreled shotgun as used in this section shall be as defined in Section 13A-11-62.

82.  At no time did LANDREAU make a finding of abuse/ neglect per CA/N Allegations and Definitions, but LANDREAU's orders did contain many statements that were materially false, including but not limited to:

a.  "A shelter care hearing was held with the child's mother on November 6, 2014, and again on November 7, 2014, after the child's father could be identified and located. Each hearing was held in a timely manner, and no party objected to the timeliness of said hearing."

b.  "The mother appeared mentally disturbed."

### EVENTS AFTER REMOVAL OF THE CHILDREN

83.  The Plaintiffs' filed an action into federal court pursuant to 42 USC 1983 against multiple defendants and COUNTY shortly after receiving LANDREAU's order complaining of denials of due process and removing filings from the record, which were subsequently dismissed in federal court without a hearing on the merits.

84.  Shortly after having the removal remanded and suit dismissed without prejudice, C. JONES, K. JONES, WARD, and POLES began to threaten the PLAINTIFFS that they would familiarly associate again they did not submit and comply with an "Individualized Service Plan", (hereinafter, "ISP"), which states "WHAT MUST HAPPEN FOR DHR TO NO LONGER BE INVOLVED WITH YOUR FAMILY. The parents have to cooperate with DHR and the court system. The mother and father both must have

their mental health assessed and follow all recommendations of the mental health services. The parents must also understand the importance of children attending school daily as the parents are not certified teachers. The parents need to understand the importance of dental and medical treatment for the children."

85. When Gillipie became added to the group of active social worker involved the ISP and responsible for investigations, the Original ISP requirements remained intact despite the absence of imminent danger, exigent circumstances or abuse/ neglect per CA/N Allegations and Definitions, and at no time did C. JONES, K. JONES, POLES, WARD, GILLISPIE or WHITLEY, who each actively participated in the formulation and promulgation of the ISP, seek to have LANDREAU's order lifted or modified as substantially inhibiting attainment of the child's permanency goal or imposes requirements inconsistent with best practice. On information and belief, C. JONES, K. JONES, POLES, WARD, GILLISPIE and WHITLEY, knew or should have known that LANDREAU's order were inconsistent with SDHR best practice with regard to the voluntary participation in Protective Services which do not constitute child abuse / neglect per CA/N Allegations and Definitions, or imminent risk of danger, or exigent circumstances, and that LANDREAU's order commanding the acceptance of Protective Services by the PLAINTIFFS, who adamantly insisted on being let alone, inhibited the attainment of the child's permanency, which at juncture in the Defendants deprivations remained the return of the children to the home, that K. JONES' petition contained my falsities, and that LANDREAU had a conflict of interest stemming from RCCPC employment, yet C. JONES, K. JONES, POLES, WARD, GILLISPIE and WHITLEY did not seek to have LANDREAU's order lifted or modified (Alabama Administrative Code 660-5-47-.03(1).).

86. The Plaintiffs continued to resist RCDHR and the Family Courts unreasonable invasion of their familial integrity refusing to comply with any Individualized Service Plan that did not include RCDHR and RCCPC Family Dependency Drug Courts immediate cessation of their unreasonable interference and filing other actions in the state courts. On multiple occasions GILLISPIE stated to the PLAINTIFFS that

we "weren't going to get the kids back if we keep fighting"..

87.     On or about June of 2015, Mr. Epps and his wife attempted to file a human trafficking criminal report with TAYLOR as Russell County Sheriff. Heath Taylor proceeding to call LANDREAU over the phone and informed us that LANDREAU had instructed him not to act on any claims or complaints that we brought. A report was taken but it is unknown if the complaint was filed on the record or investigated in any manner. It was unknown at this time that TAYLOR was an officer within RCCPC acting under the direction and control of RCCPC and DECE.

88.     After Mr. Epps' filing of the criminal report, instead of fulfilling the duty to seek to have LANDREAU's order lifted or modified, C. JONES, K. JONES, POLES, WARD, GILLISPIE and WHITLEY, chose to advance the holding of the minor Plaintiffs to the Kinship Guardian Program instead of returning the children home.

89.     Over the following months, Mr. Epps and his wife informed C. JONES, GILLISPIE, and K. JONES of their religious reservations concerning diet and abstention from immunizations. Despite having knowledge of these reservations, C. JONES, GILLISPIE and K. JONES immunized the children against Mr. Epps and his wife's wishes. C. JONES, GILLISPIE, WARD, K. JONES, POLES, WHITLEY and DOES 1-25 continued to hold the children in an attempt to force Mr. Epps and his wife to accept services through an Individualized Service Plan (hereinafter, ISP). Mr. Epps and his wife continued to refuse filing numerous actions in the state courts which were never heard on the merits.

90.     In or about on Sunday in September of 2015, Mrs. Epps' father [hereinafter, GRIFFIN] called Mrs. Epps on behalf of C. JONES. Mrs. Epps' father shares membership at a local church with C. JONES. Mrs. Epps reports that GRIFFIN asked "Why are y'all keep filing all this paperwork, putting Cherry's [meaning C. JONES] name on all papers?" Mrs. Epps reports she responded asking "what are you talking about?". Mrs. Epps states that GRIFFIN informed him that C. JONES had approached him at church and told him [GRIFFIN] that he needed to "talk to your daughter about putting her [C. JONES]

name on everything and you need to her to stop filing all this paperwork in court and do what DHR says if
they [Mr. Epps and Mrs. Epps] want to get the kids [children] back. Mrs. Epps reports that an argument
ensued between her and GRIFFIN and then ended with GRIFFIN requesting that Mrs. Epps "stop trying
to sue cherry and she go all down here to the church with me. Stop trying to sue that lady."

91.     On or about October of 2015, Mr. and Mrs. Epps requested and attended a meeting with
defendants C. JONES and WHATELY. Mr. and Mrs. Epps brought to the attention of C. JONES and
WHATELY that K. JONES lied on her petition and that no immediate danger ever existed to warrant
court intervention and the taking of her children. C. JONES and WHATELY informed Mr. and Mrs. Epps
that K. JONES had been terminated from employment with RCDHR after 14 years of service.

92.     At no time did C. JONES or WHATELY, having knowledge that the petition K. JONES contained
lies for the purpose of producing the order which led to the taking of the children inconsistent with best
practice,  and having actively participated in the formulation of ISP's involving the Plaintiffs, seek to
have the order lifted or modified as required by State laws and regulations, specifically Alabama
Administrative Code 660-5-47-.03(1).

## THE JUNE 16, 2016 REMOVAL

93.     Mr. and Mrs. Epps had another child on June 1, 2016. On or about June 6, 2016, Mr. Epps began
to receive harassing phone calls from Defendant C. JONES at his job requesting that he allow them to
conduct an unwarranted search of his home. Mr. Epps refused the solicitation and filed a police report
with the Phenix City Police Department shortly thereafter on or about June 13, 2016. Mr. Epps requested
the company of PCPD officers to the office of RCDHR. PCPD officers DOE #10 and DOE #11
accompanied Mr. Epps to the office of RCDHR were he spoke with C. JONES and DOE #9 and requested
that they adhere to their constitutional prohibitions and requisites. C. JONES proceeded to inform Mr.
Epps that her mandate "supersedes any constitutional duty". Mr. Epps left the office and instructed DOE
#10 and DOE #11 that he wanted the police report to document that C. JONES was harassing and trying

to unlawfully kidnap his children.

94.     On June 16, 2014 at or about 4:30 am, greater than 5 days after the first phone call with C.
JONES, Defendants GILLISPIE and DOE #15 showed up at the home of Mr. Epps with agents of PCPD,
DOE #10, DOE #11, DOE #12, DOE #13, and DOE #14 demanding an unwarranted search and seizure of
his home. Mr. Epps closed the door to his home after meeting the GILLISPIE and DOE #15, DOE #10,
DOE #11, DOE #12, DOE #13, and DOE #14 outside where he refused their unwarranted search and
seizure. DOE #12 placed Mr. Epps in handcuffs and forced him to sit on the front steps. Mr. Epps
continued to demand a warrant. DOE #12 stated to Mr. Epps "We don't need no warrants, you [Mr. Epps]
watch too much T.V." Over 2 hours passed when DOE #10 was overheard by Mr. Epps saying
"LANDREAU wouldn't sign it."

95.     Approximately 40 minutes after overhearing DOE #10, Mr. Epps was approached by DOE #12
with an unsigned Alabama Administrative Office of Court Form CR-1 Revision 4/99 Application for
search warrant. Mr. Epps continued to refuse the search but the GILLISPIE, DOE #10, DOE #11, DOE
#12, DOE #13, DOE #14 and DOE #15 proceeded to enter Mr. EPPS home without Mr. Epps' or his
wife's consent or the presence of exigent circumstances.  At no time was any imminent danger to any
member of his home present nor were any medical emergencies present.

96.     Gillispie took the infant to the hospital.  Mr. and Mrs. Epps followed GILLISPIE to the hospital
where they attempted to ascertain why GILLISPIE took the child. Gillispie and the hospital refused to
give Mr. or Mrs. Epps any information or let them see the child. After Gillispie's blatant disregard for the
rights of Mr. and Mrs. Epps and their right to know GILLISPIE's intentions Mr. and Mrs. Epps returned
home.

97.     The following day at or about 08:30 am Mrs. Epps contacted GILLISPIE via phone to find out
the whereabouts of the infant child and to demand the immediate return of the child. Mrs. Epps reports
that GILLISPIE stated "The baby got jaundice and he in the hospital. You didn't have no prenatal care

and if you gonna have kids you need to be having some sort of prenatal care." Mrs. Epps states she responded informing GILLISPIE ½ of her children experienced non life threatening jaundice within the first two months because she breastfeeds her infants and that she [GILLISPIE] did not have just cause to take the child as no emergency existed. Mrs. Epps then questioned GILLISPIE as to what made her speculate that Mrs. Epps didn't have any prenatal care. Mrs. Epps informs that GILLISPIE responded "Family members give us information." Mrs. Epps states that she knew GILLISPIE was lying as Mr. and Mrs. Epps had kept the pregnancy secret. Mrs. Epps reports that she went back and forth with GILLISPIE and the conversation ended abruptly.

98.    After summary removal of the infant by GILLISPIE and DOES, neither Mr. or Mrs. Epps receive any required 72 hour hearing after the June 16, 2016 summary removal as required by Alabama law and State Regulation (Alabama Administrative Rule 660-5-34.11). Despite the absence of conditions/circumstances that constitute child abuse/ neglect per CA/N Allegations and Definitions, immediate danger or harm, and despite protective custody being prohibited from exceeding 72 hours without temporary custody orders being issued by a court of competent jurisdiction, and despite holding protective custody of any child without an order issued from a court of competent being devoid of legal sanction pursuant to State law and regulations, at no time has any Defendant move to return the children to the rightful custody of Mr. and Mrs. Epps, despite Family Dependency Courts being completely devoid jurisdiction, despite GILLISPIE never having conducted any type of CA/N assessment, or having even seen a child to allege any imminent and immediate danger or medical condition in need of intervention.

99.    Neither Mr. or Mrs. Epps ever received any petition from GILLISPIE or the Family Dependency Drug Court.

100.    On information and belief, C. JONES, POLES, BELLAMY, and WHATLEY were terminated in or about July of 2016. GILLISPIE became more active in promulgation of the ISP sought to be forced on the PLAINTIFFS. At all times relevant, GILLISPIE knew or should have known that her holding of

K.I.E. since June 16, 2016 was unlawful and devoid of legal sanction due to a failure to receive an order from a court of competent jurisdiction for the continuation of protective services and knew of prior issues mentioned herein that invoked a mandated duty on GILLISPIE to seek to have LANDREAU's order lifted or modified. Instead of seeking to have LANDREAU's order and whatever order relied upon by GILLISPIE rendered in the Family Dependency Court to continue the detention of K.I.E., GILLISPIE recommended moving for termination of parental rights of Petitions in an attempt to further exacerbate the familial deprivations suffered by the PLAINTIFFS.

101.    On October 28, 2016, Defendant COLLINS was appointed District Court Judge and Juvenile Judge to fulfil a vacancy left by LANDREAU. In November of 2016, ZACH COLLINS ipso facto vacated to Office of District Court Judge, accepting the Office of RCCPC Chairman in service to COUNTY. At no time did COLLINS ever publicly disclose the the accepts of his post in RCCPC. Knowledge of some of COLLINS close relationships with RCDHR became known to PLAINTIFFS in or about June of 2017.

102.    Based on this limited knowledge of COLLINS extrajudicial relation with RCDHR regarding the workings of the courts, the parents sought recusal of COLLINS, but COLLINS ignored the request. PLAINTIFFS also informed COLLINS of the lack of imminent danger, immediate threat, and abuse/neglect, and as defined by Administrative Rules, and of the failures at due process and respect for familial integrity on part of the individual Defendants. COLLINS had also be informed that no service of any papers related to the termination had been affected on Mr. or Mrs. EPPS.  COLLINS ignored the request utimately terminating the parental rights of PLAINTIFFS in complete absence of Jurisdiction just as LANDREAU. PLAINTIFFS also timely filed a demand for exculpatory evidence by the SDHR but that request was ignored by COLLINS and SDHR.

103.    In August of 2017, RCCPC Chairman, Defendant COLLINS, terminated the parental rights of PLAINTIFFS in the RCCPC Family Dependency Drug Court on petition of GILLISPIE. Despite Mr. and

Epps informing COLLINS of

## THE APRIL 11, 2018 UNWARRANTED SEARCH AND SEIZURE

104.    On or about April 11, 2018, RCDHR agents again arrived at the home of Mr. Epps and demanded

search of his home on suspicion that Mr. Epps had another child. At no time did DOE #16, DOE #17,

DOE #18, DOE #19, DOE #20 or DOE #21 report any imminent danger, exigent circumstances, that a

crime was afoot or about to occur, that any medical emergency existed. At no time did DOE #16, DOE

#17, DOE #18, DOE #19, DOE #20 or DOE #21 produce any papers related to visit.

105.    After having the unwarranted search refused by Mr. Epps and his wife, Russell County

Department of Human Resources agent Defendants DOE #16, and DOE #17; RCSD DOE #18, DOE #19;

and PCPD DOE #20 and DOE #21 proceeded to conduct the unwarranted search and seizure without

warrant or the presence of imminent danger. After finding nothing at Mr. Epps home, the agents left. The

following day Mr. Epps appeared at the Russell County Courthouse where he discovered that no action

had been filed with the office of the clerk of court and that no other papers related to the April 11, 2018

unwarranted search had originated with the clerk. After making this discovery, Mr. Epps immediately

filed for a protection order pursuant to Section 30-5-5 of the Alabama Code which was not ruled on

within the time prescribed by law. The petition was ultimately dismissed without hearing by RCCPC

Chairman Zach Collins approximately six months later. On information and belief, at no time did DOE

#16 or DOE #17 receive a report that could invoke RCDHR investigative duties pursuant to statute.

## MEDICAL TREATMENT WITHOUT NOTICE/CONSENT

106.    During the pendency of the juvenile dependency court process the Plaintiffs were subjected to as

a result of the removal of their children, C. JONES, GILLISPIE and K. JONES, and/or other yet unknown

defendants (Does 21 - 25) subjected the minor Plaintiffs to invasive medical examinations and

procedures, including but not limited to:

> a.  the administration of vaccinations in violation of the parents express statements that their
>     children were not to be immunized and specific withholding of consent for
>     immunizations,

b.  dental examinations and procedures, including the use of mercury fillings in the
    children's teeth, and

c.  mental health evaluations.

## CHILD SUPPORT

107.    In or about October of 2017, Mr. Epps received a notice of intent to suspend license for failure to

pay child support derived from the defendants' unlawful removal of the minor Plaintiff from Mr. and Mrs.

Epps' custody. The informed that Mr. Eppd may choose a hearing to avoid suspension if within 60 days

as a requirement of due process. After timely requesting a hearing to contest the child support license

suspension, Gillispie, and DOES #26 - 30 failed to adhere to their ministerial duty to provide a hearing

regarding the suspension and suspended the license without cause. As a result of Gillispie, and DOES #26

- 30 omission of these due process requirement, Mr. Epps was arrested and detained on two  routine traffic

stops which resulted in fines, fees and arrest for driving while license suspended.

## IV DAMAGES

108.    As a result of the conduct of Defendants, Plaintiffs suffered severe emotional distress, anxiety and

general damage to their psyche, to such the presence of constant fear as to the privacy of the home being

arbitrarily and capriciously intruded upon., symptoms severe depression, including but not limited to

sleeplessness, headaches, fatigue, malaise, irritability, inability to focus, a generalized fear of authority

figures and social workers, loss of appetite and loss of weight. In March of 2016, Mr. Epps had prominent

employment at a local hospital. In the short time between March of 2016 and the June 16, 2016 removal,

Mr. Epps had become a standout at his employment, receiving his own office space and the expectation of

a raise within the following month. C. JONES' repeated harassing call to his place of employment and the

various departments within the hospital caused Mr. Epps to ultimately quit.   The incident also caused

humiliation and embarrassment and loss of reputation in the community to PLAINTIFFS, has caused the

incursion of medical fees, therapy fees, and expenses related thereto, and is likely to cause the incursion

of further medical, therapy, and/or counseling fees in the future as well as expenses related thereto. These actions have also resulted claims against PLAINTIFFS' persons for child support stemming from the Defendants unlawful interference with custody.

109. PLAINTIFFS are informed and believe, and thereupon allege, that they were placed on various state and local database registries for perpetrators of child abuse, further damaging their reputation and likely causing damages in the future in their rights of membership, society, community participation, and association.

110. PLAINTIFFS seek an award of exemplary (punitive) damages under federal law and pursuant to Code of Alabama §6-11-20 to make an example of and punish DEFENDANTS, and in the hope of deterring future conduct of a similar nature.

## V. CLAIMS FOR RELIEF

### COUNT ONE

Violations of the 4th Amendment - Entry [Defendants: Gillispie; DOE #10, DOE #11, DOE #12, DOE #13, and DOE #14, DOE #15, DOE #16, DOE #17, DOE #18, DOE #19, DOE #20 and DOE #21] [Claim re: Gillispie and Doe's entry into the home without consent, probable cause, or exigent circumstances]

111. PLAINTIFFS re-allege and incorporate paragraphs 1 through 110, inclusive, as though fully set forth at this point, as they relate to a cause of action for a violation of Plaintiffs' civil rights under the 4th Amendment to the United States Constitution, with regard to the warrantless entry into PLAINTIFFS' residence by Gillispie and DOE #10, DOE #11, DOE #12, DOE #13, and DOE #14, DOE #15, DOE #16, DOE #17, DOE #18, DOE #19, DOE #20 and DOE #21.

112. PLAINTIFFS allege the entry into their residence was undertaken without consent, probable cause, a protective custody warrant, abuse/neglect as defined by Administrative Rules, or exigent circumstances justifying DOE #10, DOE #11, DOE #12, DOE #13, and DOE #14, DOE #15, DOE #16, DOE #17, DOE #18, DOE #19, DOE #20 and DOE #21.

113. PLAINTIFFS re-allege paragraphs 108 through 110 as said damages relate to a cause of action for a violation of their civil rights for the warrantless entry into their home.

114. The punitive damage allegations of paragraph 110 apply in this cause of action as against

GILLISPIE and DOE #10, DOE #11, DOE #12, DOE #13, and DOE #14, DOE #15, DOE #16, DOE #17,

DOE #18, DOE #19, DOE #20 and DOE #21.

## COUNT TWO

Violations of the 4th Amendment - Search and Seizure [Defendants: COUNTY, CITY, GILLISPIE, DOE #4, DOE #7, DOE#6, DOE#8, DOE #10, DOE #11, DOE #12, DOE #13, DOE #14, and DOE #15][Claim re: search upon entry by GILLISPIE, DOE #10, DOE #11, DOE #12, DOE #13, DOE #14, DOE #15, DOE #16, DOE #17, DOE #20 and DOE #21]

115. PLAINTIFFS re-allege and incorporate paragraphs 1 through 114, inclusive, as though fully set

forth at this point, as they relate to a claim for relief for the unlawful search of PLAINTIFFS' home, and

the minor Plaintiffs incorporate said paragraphs, as though fully set forth at this point, as they relate to a

claim for relief for the unlawful seizure of their persons.

116. PLAINTIFFS allege the facts and circumstances set forth hereinabove with regard to the unlawful

search of the PLAINTIFFS' home by Gillispie, DOE #4, DOE #7, DOE#6, DOE#8, DOE #10, DOE #11,

DOE #12, DOE #13, DOE #14, DOE #15, DOE #16, DOE #17, DOE #20 and DOE #21, and the removal

of the minor Plaintiffs, constituted both an unlawful search of their residence and an unlawful removal of

the minor Plaintiffs, in that said search and seizure was undertaken without consent, probable cause, a

protective custody warrant, exigent circumstances, or

117. PLAINTIFFS re-allege paragraphs 108 through 110 at this point as said damages relate to a claim

for relief for the unlawful search, as stated.

118. The punitive damage allegations of paragraph 110 apply in this claim for relief to GILLISPIE,

DOE #4, DOE #7, DOE#6, DOE#8, DOE #10, DOE #11, DOE #12, DOE #13, DOE #14, DOE #15, DOE

#16, DOE #17, DOE #20 and DOE #21.

## COUNT THREE

Violations of the 14th Amendment - Seizure/Interrogation [Defendants: COUNTY, CITY, GILLISPIE, DOE #10, DOE #11, DOE #12, DOE #13, DOE #14, and DOE #15][Claim re: Seizure/interrogation of children over parent objection .]

119.    PLAINTIFFS re-allege and incorporate paragraphs 1 through 118, inclusive, as though fully set forth at this point, as they relate to a claim for relief for a violation of PLAINTIFFS' rights under the 14th Amendment to the United States Constitution, against LANDREAU, COLLINS, BELLAMY, WHATLEY, WARD, GILLISPIE, C. JONES, K. JONES, and DOE #4, DOE #7, DOE#6, DOE#8, DOE #10, DOE #11, DOE #12, DOE #13, DOE #14, and DOE #15, and by virtue of the existence of policies, practices, customs and procedures, as well as inadequate training on the standards under federal and/or state law allowing for the warrantless removal of children and due process, the COUNTY, with regard to the violation of the PLAINTIFFS' rights of familial association with their children by way of the interrogation and holding of the PLAINTIFFS' children over the PLAINTIFFS' objection.

120.    PLAINTIFFS re-allege the interrogation and holding of their children was undertaken without consent, probable cause, a protective custody warrant, or exigent circumstances justifying interrogation or holding of the minor children, and that the policies, practices, customs, procedures, or inadequate training of social workers such as GILLISPIE, C. JONES and K. JONES, GILLISPIE, POLES, BELLAMY, and DOE #16, and DOE #17, and law enforcement officers such as DOE #10, DOE #11, DOE #12, DOE #13, DOE #14, DOE #20 by CITY, were a contributing or driving force behind the action of unlawfully interrogating their children, and exhibited a deliberate indifference to the rights of citizens of the County of Russell generally, and PLAINTIFFS specifically.

121.    PLAINTIFFS re-allege paragraphs 108 through 110 as said damages relate to a claim for relief for a violation of PLAINTIFFS' civil rights for the unlawful interrogation of the minor children.

122.    The punitive damage allegations of paragraph 110 apply in this claim for relief to TAYLOR, BELLAMY, WHATLEY, WARD, GILLISPIE, C. JONES, K. JONES, and DOE #10, DOE #11, DOE #12, DOE #13, DOE #14, and DOE #15.

## COUNT FOUR

Violations of the 14th Amendment - Violation of 14th Amendment – Interference Familial Relations
[Defendants: COUNTY, CITY, TAYLOR, COLLINS, LANDREAU, GILLISPIE, C. JONES, K. JONES, BELLAMY, WHITLEY, WARD, DOE #10, DOE #11, DOE #12, DOE #13, DOE #14, and DOE #15][Claim re: Claim re: Removal of children.]

123.    PLAINTIFFS re-allege and incorporate paragraphs1 through 122, inclusive, as though fully set forth at this point, as they relate to a claim for relief for a violation of PLAINTIFFS' rights under the 14th Amendment to the United States Constitution, against COLLINS, LANDREAU, C. JONES, K. JONES, GILLISPIE, BELLAMY, WHITLEY, WARD, DOE #10, DOE #11, DOE #12, DOE #13, DOE #14, and DOE #15, and by virtue of the existence of policies, practices, customs, and procedures, as well as inadequate training on the standards under federal and/or state law allowing for the warrantless removal of children, the COUNTY and CITY, with regard to the violation of the PLAINTIFFS' rights of familial association with their children by way of their warrantless removal.

124.    PLAINTIFFS re-allege that all removals utilizing RCCPC Family Dependency Courts were undertaken in the complete absence of jurisdiction, and without consent, probable cause, valid warrant, immediate danger, conditions/circumstances constituting child abuse child abuse/ neglect per CA/N Allegations and Definitionsor, or exigent circumstances justifying removal of the minor children, and involuntary participation in Child Protective Services by the Plaintiff, and that the policies, practices, customs, procedures, or inadequate training of social workers such as K. JONES, GILLISPIE, BELLAMY, WHITLEY and RCCPC officers such as TAYLOR, LANDREAU, C. JONES, and COLLINS by COUNTY, and DECE and law enforcement officers such as DOE #4, DOE #7, DOE#6, DOE#8, DOE #18, and DOE #19 by TAYLOR, and DOE #10, DOE #11, DOE #12, DOE #13, DOE #14, DOE #20 and DOE #21 by CITY, were a contributing or driving force behind the action of removing their children needlessly and without a warrant from PLAINTIFFS.

125.    PLAINTIFF further re-alleges that LANDREAU and COLLINS, due to acceptance of the Office of RCCPC Chairman in service to COUNTY, and the ipso facto vacation of incompatible judicial office held before acceptance of the new incompatible offices as required by state law (Constitution of Alabama 1901 Amendment 328 Section 6.08(b).), did not, and could not preside in a court competent jurisdiction to hear juvenile petitions (Alabama Rules of Juvenile Procedure Rule 2), could not preside over a court of

competent to hear a juvenile petition executed by a state agency regardless of any ipso facto vacation (Ala. Const. Amendment 328 Section 6.04(b) and Section 6.05), and could not hear or preside over any matter in which his duty as RCCPC to expand the capacity of agencies to intervene into family integrity, conflict with the Plaintiffs, and knowing that they could not possess any judicial power to make any adjudications regarding custody or the removal of the minor Plaintiffs, and that the exercise of the powers to judicially review original agency actions, such as Juvenile Dependency Action, are reserved for a circuit court judges. Any adjudication by RCCPC Chairman LANDREAU and/or COLLINS constituted a fraud on the court, and were in direct violation of state law governing juvenile proceedings (Code of Ala. Section 12-15-101(b)(2).), juvenile procedures (Alabama Rules of Juvenile Procedure Rule 2), prohibitions on multiple office holdings by state court judges (Ala. Const. Amendment 328 Section 6.08(b).), reviews of agency actions (Ala. Const. Amendment 328 Section 6.01), the protection of PLAINTIFFS right to privacy during DHR investigations seeking court intervention (Code of Ala. Section 26-14-7), and the illegality of "Protective Service" extending greater than 72 hours without order from a court of competent jurisdiction (Ala. Admin. Code 660-5-34-.11), and that the policies, practices, customs, procedures, or inadequate training of RCCPC officers by COUNTY, and DECE were a driving force behind the action of altering custody of children in the complete absence of jurisdiction.

126. PLAINTIFFS allege that the removal of minor Plaintiffs, and/or their placement other than with PLAINTIFFS, from the time of their removal and continued detention, is achieved by Misrepresentations in violation of Section 6-5-101 Code of Alabama, Suppression of material fact in violation Ala. Code Section 6-5-102, Code of Alabama 1975, deceit in violation of Ala Code Section 6-5-104, False Imprisonment in violation of Ala Code Section 6-5-170, False Swearing in violation of Ala. Code 6-5-180 and Interference with Custody in violation of Ala. Code Section 13A-6-45, Corrupting Testimony in violation of Ala. Code Section 13A-10-12, Sham Legal Proceedings in violation of Ala. Code Section 13A-10-132, and Failure to Disclose Ala. Code Section 13A-10-62.

127. PLAINTIFFS re-allege paragraphs 108 through 110 as said damages relate to a claim for relief

for a violation of PLAINTIFFS' civil rights for the warrantless removal of the minor children.

128. The punitive damage allegations of paragraph 110 apply in this claim for relief to TAYLOR,

COLLINS, LANDREAU, GILLISPIE, C. JONES, K. JONES, BELLAMY, WHITLEY, and WARD

## COUNT FIVE

Violation of 14th Amendment – Continued Detention [Defendants: COUNTY, COLLINS, LANDREAU, GILLISPIE, C. JONES, K. JONES, POLES, WHITLEY, WARD][Claim re: Claim re: Continued detention of children after removal through Detention and Jurisdictional hearings in dependency matter, accomplished by repeated use of false statements of fact, misrepresentations, and omission of relevant facts in testimony, and reports, and failure to petition to modify an order inconsistent with best practices]

129. PLAINTIFFS re-allege and incorporates paragraphs 1 through 128, inclusive, as though fully set

forth at this point, as they relate to a claim for relief for a violation of PLAINTIFFS' rights under the 14th

Amendment to the United States Constitution, with regard to the violation of PLAINTIFFS' rights of

familial association with their children, as separate and distinct from removal of the children, and

consisting of the continued detention of the children, and is a claim against Defendants COLLINS,

LANDREAU, GILLISPIE, C. JONES, K. JONES, POLES, WHITLEY, WARD, and by virtue of the

existence of policies, practices, customs and procedures, as well as inadequate training on the standards

under federal and/or state law allowing for the warrantless removal and continued detention of children,

the COUNTY.

130. PLAINTIFFS allege that the continued detention of the children was accomplished in the

complete absence of jurisdiction by RCCPC Family Dependency Courts, through the exercise of a fraud

upon the court, misrepresentations, refusals to modify orders that are against best practice and

incompatible with permanency goals as required by law (Alabama Administrative Code 660-5-47-.03),

and sham legal proceedings, and was in direct contravention of state law which mandates that

participation in protective services be voluntary when family conditions/ circumstances appear to be

presenting a risk of maltreatment and the conditions/circumstances do not constitute child abuse/ neglect

per CA/N Allegations and Definitions (Alabama Administrative Code 660-5-34-.13) and that the policies,

practices, customs, procedures, or inadequate training of social workers and RCCPC Officers by COUNTY, were a driving force behind the action continuing the detention of the children needlessly and without a warrant.

131.    PLAINTIFFS allege that the continued detention of minor Plaintiffs, and/or their placement other than with PLAINTIFFS, from the time of their removal and through the period of time until they are returned to PLAINTIFFS is achieved by sham proceedings, concealment of evidence, by the presentation of false facts and the exclusion of exculpatory facts and information to courts of competent jurisdiction.

132.    Defendants COLLINS, LANDREAU, GILLISPIE, C. JONES, K. JONES, POLES, WHITLEY, and WARD did not at any time, reasonably consider, implement, or attempt, any aspect of the "reasonable efforts" , "good cause" , or voluntariness of protective services involvement where family conditions/ circumstances appear to be presenting a risk of maltreatment and the conditions/circumstances do not constitute child abuse/ neglect per CA/N Allegations and Definitions, as required by Alabama law and/or regulations regarding social work, juvenile procedure, and child protective services, and this conduct is also a result of the deliberate indifference to the rights and safety of parents and children evidenced by the failure to train, or failure to train adequately, those employees such as the employee defendants herein of COUNTY.

133.    Alabama laws, including but not limited to Code of Alabama Section 26-14-7, Section 12-15-140, Section 12-15-301(11), and Section 12-15-319(7); and Ala. Admin. Rules 660-5-34-.10(2), and 660-5-34-.13 require reasonable efforts be made when child protective services be invoked to avoid removing the child and continue home placement, and require that services are voluntary when abuse and neglect does not meet the definition of SDHR and/or exigent circumstances are not present. No such reasonable effort were made in this matter and no such voluntary consent to protective services has ever been granted to PLAINTIFFS.

134.    PLAINTIFFS re-allege paragraphs 108 through 110 as said damages relate to a claim for relief

for a violation of PLAINTIFFS' civil rights for the warrantless removal of the minor children.

135.     The punitive damage allegations of paragraph 110 apply in this claim for relief to TAYLOR,

POLES, WARD, K. JONES, GILLISPIE, BELLAMY, WHATLEY, COLLINS, and LANDREAU.

## COUNT 6

Violation of 14th Amendment – Unauthorized Medical Procedures Defendants: WHITLEY, C. JONES,
GILLISPIE, BELLAMY, LANDREAU, POLES, WARD, K. JONES] [Claim Re: Unauthorized medical /
dental procedures, inoculations, physical examinations and mental health evaluations of the minor
children without prior notice to parents, or consent.]

136.     PLAINTIFFS re-allege and incorporate paragraphs 1 through 135, inclusive, as though fully set

forth at this point, as they relate to a claim for relief for a violation of PLAINTIFFS' rights under the 14th

Amendment to the United States Constitution, with regard to the violation of PLAINTIFFS' rights of

familial association with their children, as separate and distinct from the removal of the children and the

continued detention of the children, and consisting of depriving the PLAINTIFFS' of the right to decide

whether or not their children are to receive medical care, unwarranted voluntary protective services, and

the right to be notified, and be present when their children are to receive medical care, and against

LANDREAU, WARD, GILLISPIE, C.JONES, K. JONES, POLES, BELLAMY and WHITLEY, and by

virtue of the existence of policies, practices, customs and procedures, as well as inadequate training on the

standards under federal and/or state law allowing parents the right to decide whether or not their children

are to receive medical care and the right to be notified and be present when their children are to receive

medical care, the COUNTY.

137.     PLAINTIFFS allege that PLAINTIFFS' children's vaccines were achieved by the presentation of

false facts and information and the exclusion of exculpatory or mitigating facts and/or failing to seek to

lift or modify an order in consistent with permanency goals or best practices.

138.     LANDREAU, GILLISPIE, C. JONES, K. JONES, WHITLEY, WARD, POLES, and

BELLAMY's conduct is also a result of the deliberate indifference to the rights and safety of parents and

children evidenced by the failure to train, or failure to train adequately, those employees such as the

employee defendants herein of COUNTY.

139. PLAINTIFFS re-allege paragraphs 108 through 110 as said damages relate to a claim for relief

for a violation of PLAINTIFFS' civil rights for the warrantless removal of the minor children.

140. The punitive damage allegations of paragraph 110 apply in this claim for relief to LANDREAU,

GILLISPIE, C. JONES, K. JONES, WHITLEY, WARD, POLES, and BELLAMY.

141. PLAINTIFFS re-allege paragraphs 1 through 140 as said damages relate to a claim for relief for a

violation of PLAINTIFFS' civil rights for the continued detention of PLAINTIFFS' children in violation

of PLAINTIFFS' rights of familial association, and against said individual plaintiffs and COUNTY.

142. The punitive damage allegations of paragraph 139 apply in this claim for relief to C. JONES,

GILLISPIE, BELLAMY, LANDREAU, POLES, WARD, K. JONES

## COUNT 7

Intentional Infliction of Emotional Distress [Defendants: TAYLOR, LANDREAU, COLLINS, GILLISPIE, C. JONES, K. JONES, BELLAMY, WHITLEY, WARD] [Claim re: Entire course of conduct and specific conduct of defendants from removal, through detention and submission of false allegations and evidence in dependency proceedings, and subjecting of the minor children to medical / dental procedures and inoculations without prior notice and consent of parents.]

143. The adult PLAINTIFF Dammuon Epps reallegs and incorporate paragraphs 1 through 142 inclusive, as though fully set forth at this point, as they relate to a claim for relief for intentional infliction of emotional distress

144. The adult PLAINTIFF Dammuon Epps alleges the facts and circumstances set forth hereinabove as related to the wrongful entry into and search of their home, the wrongful removal and continued detention of their children, and the Defendants' false statements and misrepresentations to the juvenile court, failures to disclose and/or intentional withholding of exculpatory evidence get order modified or lifted, failures to disclose and/or intentional withholding of evidence, and unlawful medical care and failure to notify parents of said medical care appointments, set forth all necessary elements for a claim for relief against Defendants TAYLOR, LANDREAU, COLLINS, GILLISPIE, C. JONES, K. JONES,

BELLAMY, WHITLEY, and WARD for intentional infliction of emotional distress, and that the actions of the named individual and Doe Defendants set forth hereinabove were intended to cause, or were engaged in with reckless disregard for the rights of the adult PLAINTIFFS' Sebastian & Mirsha and/or the likelihood of causing the adult PLAINTIFF Dammuon Epps severe emotional distress, and did cause such distress and violate the adult PLAINTIFF Dammuon Epps' rights.

145. The adult PLAINTIFF Dammuon Epps re-allege paragraphs 108 through 110 as said damages relate to a claim for relief for intentional infliction of emotional distress.

146. The punitive damage allegations of paragraph 136 apply in this claim for relief to TAYLOR, LANDREAU, COLLINS, GILLISPIE, C. JONES, K. JONES, BELLAMY, WHITLEY, and WARD.

## COUNT 8
Monell Liability – Entry, Search, Removal, Continued Detention, Medical Procedures- [Defendant . COUNTY, BUCKNER, ROSS]

147. PLAINTIFFS re-allege, adopt, and incorporate as if set forth at length, and to the extent applicable, paragraphs 1 through 147.

148. At all relevant times herein, Defendant BUCKER, ROSS, and COUNTY, including through its RCDHR, and RCCPC, established and/or followed policies, procedures, customs, and/or practices (hereinafter collectively referred to as "policy" or "policies") which policies were the cause of violation of PLAINTIFFS' constitutional rights protected pursuant to 42 U.S.C. § 1983, as well as the case of Monell v. New York City Department of Social Services, 436 U.S. 658 (1978), including those under the First, Fourth, and Fourteenth Amendments, including but not limited to:

- a. The policies, practices, and procedures of COUNTY and DECE of detaining and/or removing children from their parents without exigent circumstances (imminent danger of serious bodily injury), court order and/or consent of their parents;

- b. The COUNTY, and DECE policies, practices, and procedures of causing minor children to be dependents of the COUNTY and DECE and as to COUNTY and DECE, fabricating

and misrepresenting evidence, excluding and/or hiding exculpatory evidence from the court, utilizing sham proceedings and predetermined adjudications for dependency all in an effort to cause the children to continue to be dependents of the court, removing the children's legal and physical custody from their parents beyond a reasonable period after the basis for any such removal is negated, had it ever existed;

c. The policies, practices and procedures of COUNTY, and DECE of personnel (social workers, CPS, RCDHR, RCCPC) signing and presenting petitions in dependency actions under the penalty of perjury without personal knowledge of the truth and/or accuracy of the allegations contained therein and having not done any investigation or CA/N assessment of any kind as to the content of the allegations made, and the use of sham proceedings;

d. The policies, practices, and procedures of COUNTYand DECE of providing nonemergency medical care to minors without parental approval and/or court order and failing to notify parents and/or allow parents to attend medical appointments and procedures;

e. The policies, practices and procedures of COUNTY and DECE refusing to provide exculpatory and/or relevant and related evidence, testimony, reports, and information regarding the investigation of juvenile dependency matters, even when properly requested and demanded; and refusal to seek to lift or modify court orders that are against best practices or inconsistent with the permanency plan, and

f. By acting with deliberate indifference in implementing a policy, practice, or procedure of non-existent and/or inadequate training, and/or by failing to train their respective officers, agents and employees, in providing the Constitutional protections guaranteed to individuals, including those under the First, Fourth, and Fourteenth Amendments, when

performing actions related to the investigation of child abuse and neglect, including

dependency type proceedings. Defendant BUCKNER, ROSS and COUNTY, as well as

RCDHR and RCCPC as agencies or agents of the COUNTY, BUCKNER and ROSS had

duties to PLAINTIFFS at all times to establish, implement and follow policies,

procedures, customs and/or practices which confirm and provide for the protections

guaranteed PLAINTIFFS under the United States Constitution, including the First,

Fourth, and Fourteenth Amendments; to use reasonable care to select, supervise, train,

control and review the activities of all agents, officers, and employees in their employ,

including within RCDHR and/or RCCPC; and further, to refrain from acting with

deliberate indifference to the Constitutional rights of PLAINTIFFS herein so as to not

cause PLAINTIFF the injuries and damages alleged herein.

149.    Defendants BUCKNER, ROSS, and COUNTY breached their duties and obligations to

PLAINTIFFS, including, but not limited to, failing to establish, implement and follow the correct and

proper Constitutional policies, procedures, customs, and practices, by failing to properly select, supervise,

train, control, and review their respective agents and employees as to their compliance with Constitutional

safeguards; and by permitting named Defendants, and other defendants whose identities are not yet

known, to engage in the unlawful and unconstitutional conduct as herein alleged.

150.    Defendant DECE, COUNTY also provided inadequate and/or non-existent training, including but

not limited to, 1.) non-existent and/or inadequate training on the Fourth and Fourteenth Amendments as

same apply in the context of a child abuse investigation that may involve the removal of children from

their parent(s), 2.) the existence and/or use of protective custody warrants provided for under ~~California~~ Alabama *as* 07/30/19

law, 3.) the emotional trauma and psychological damage to a child from removal, 4.) the clearly

established law of this federal circuit on the issues of warrantless removals, exigency, least intrusive

means, and the proper investigation before removal of a child, 5.) state law applicable to juvenile

dependency proceedings and the reunification of children with their parents, and/or avoidance of removal entirely.

151. PLAINTIFFS re-allege the allegations of paragraphs 108 through 110 as said damages relate to a claim of relief for a violation of their civil rights as stated and pursuant to the aforesaid policies, practices, procedures, and/or customs, and/or non-existent / inadequate training.

152. These actions, or inactions, of Defendants are the legal cause of injuries to PLAINTIFFS as alleged herein, and as a result thereto, PLAINTIFFS have sustained general and special damages, and expenses, including those as authorized by 42 U.S.C. § 1983, to an extent and in an amount subject to proof at trial.

WHEREFORE, PLAINTIFFS respectfully requests that this Court:

1.) Award PLAINTIFFS general, special and compensatory damages in an amount to be proven at trial;

2.) Award PLAINTIFFS punitive damages against individually named Defendants, and each of them, for their extreme and outrageous conduct in complete disregard for the rights of the PLAINTIFFS;

3.) Grant PLAINTIFFS such other and further relief as the Court may deem just and proper.



07/30/2019

Dammien Epps
92 Ware Road
Phenix City, AL 36869



**UNITED STATES POSTAL SERVICE**

Retail

**P**

US POSTAGE PAID

**$10.40**

Origin: 36867
07/30/19
0164300867-02

PRIORITY MAIL 1-DAY ®

0 Lb 9.00 Oz

1006

EXPECTED DELIVERY DAY: 07/31/19

C039

SHIP
TO:
1 CHURCH ST
MONTGOMERY AL 36104-4018

USPS SIGNATURE TRACKING NUMBER

9510 8104 3168 9211 3057 75

U.S. Federal Court
Middle District Alabama
Clerk of Court   Debra Hackett
Case No  3:18-CV-01017
One Church Street
Montgomery, AL 36104



PRIORITY® MAIL

United States
Postal Service®

VISIT US AT USPS.COM®
Label 106A, Nov 2018

This product is for use with Priority Mail®. Misuse may be a violation of federal law. This label is not for resale.

PRIORITY® MAIL

United States
Postal Service®

VISIT US AT USPS.COM®
Label 106A, Nov 2018

This product is for use with Priority Mail®. Misuse may be a violation of federal law. This label is not for resale.

PRI

VISIT US AT USP

Label 106A, Nov 20